**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 26, 2014**

# In the Court of Appeals of Georgia

A13A1881. IN THE INTEREST OF B. T. H. and S. B. P., children.

RAY, Judge.

This is an appeal from an order of the Chattooga County Juvenile Court adjudicating two minor children, B. T. H. and S. B. P., deprived. The appeal was filed by the mother of both children and by the father of S. B. P.[1] They contend that the juvenile court erred by (1) entering an adjudicatory order following a 72-hour detention hearing and (2) by refusing to transfer venue to Floyd County. For the reasons that follow, we affirm as to venue; however, because the parents were not afforded an adequate opportunity to be heard, we reverse and remand with direction.

---

[1] The mother had custody of both children. B. T. H.'s father did not appeal, but testified as a witness below.

This action began when the children's grandmother filed a private deprivation petition on March 13, 2013. On March 18, 2013, the juvenile court held a hearing at which both sides presented evidence and witnesses. Some of the witnesses testified, inter alia, about drug use by the parents, their failure timely to seek medical care for the children, and a lack of food in the house.

The incident that prompted the grandmother to file a private deprivation petition, however, occurred when the children were in Tennessee visiting their great-grandmother. During that time, B. T. H. had a conversation with his mother in which he told her that he would not go back to live with her, and his mother said "that she would drag [both children] out and put them in the car an[d] take them home and torture them." After learning of this conversation, the grandmother contacted a child protective services worker in Tennessee, who told her she could not seek a protective order there because the children were not Tennessee residents. The children then went to the grandmother's home in Chattooga County, and the grandmother initiated this action.

At the hearing, B. T. H.'s father testified that, about three weeks prior to the hearing, he had seen prescription pain pills, Oxycontin, Xanax, and heroin in the bedroom shared by the mother and S. B. P.'s father, and that the mother took drugs

by "snorting" them while S. B. P.'s father took them intravenously. He also testified that when B. T. H. came to Tennessee, the mother had put a hydrocodone pill in B. T. H.'s shoe and had told the child about it. The pill was meant as a "surprise" for B. T. H.'s father. B. T. H.'s father also stated that he was present when B. T. H. told the mother that he did not want to live with her any longer, and she responded that she would drag the children out and torture them. He testified that B. T. H. "was crying vehemently in a fetal position just scared to death."

The mother denied having illegal drugs in her home and presented the results of a drug screen done that morning showing positive results only for her prescription medication, Ativan. She denied threatening to torture the children, but said that B. T. H. accused her of lying and told her "I don't want to come home[,]" and she told him, "to[o] bad, you're coming home." S. B. P.'s father testified that he did not use illegal drugs and that there were none in his home. He also presented a drug screen from two days earlier showing positive results for Oxycodone, for which he stated that he had a prescription. He testified that he had been incarcerated for the sale and delivery of morphine.

The juvenile court spoke to the children in camera. B. T. H. testified that his mother and S. B. P.'s father were "always fighting" and stayed in their room "24, 7."

3

S. B. P. testified that her mother smoked marijuana, and B. T. H. stated, "You can smell drugs and pot throughout the whole house[,]" and that he sometimes got up in the night only to find S. B. P.'s father "passed out[.]" He said he was afraid to go home, and that his mother had slapped him and pinched S. B. P.'s leg. S. B. P. told the juvenile court that she did not want to go home because she was "totally scared," and that if she and her brother were sent home, the parents would "probably torture us in some way or another."

1. The mother and S. B. P.'s father contend that the juvenile court erred in treating the 72-hour detention hearing "post hoc" as an adjudicatory hearing. We agree.

As noted above, the grandmother initiated the action with a deprivation petition. That same day, the juvenile court ordered emergency shelter care for the children with the grandmother pursuant to OCGA § 15-11-46,[2] timely scheduled what its order referred to as a "72 Hour Hearing," and gave notice to the parents to appear. At the hearing, the juvenile court confirmed at the outset that this was a hearing following an "emergency order," and at the end of the hearing, stated from the bench,

---

[2] This section, and the other sections of the juvenile code cited herein were repealed by Ga. Laws 2013, Act 127, § 1-1, effective January 1, 2014.

4

> I find there is enough evidence and that there is deprivation that exists to the extent where I'm going to *continue the emergency order in place* and place the children at this time with their grandmother . . . this is a *temporary situation*, nothing that's done in this Court on the children is permanent. (Emphasis supplied.)

The day after the hearing, however, the juvenile court entered an "Order of Adjudication and Disposition." While we recognize that an order is defined not by its nomenclature but by its substance, see generally *In re Estate of Sims*, 246 Ga. App. 451, 452 (540 SE2d 650) (2000), in substance this was indeed an adjudicatory order. The juvenile court stated that it had held an "Adjudicatory Hearing" and the order contained conclusions of law and – albeit somewhat rudimentary – findings of fact.

OCGA § 15-11-49 (e) provides that if, as here, a child is alleged to be deprived and is not released after a 72-hour hearing, a deprivation petition "shall" be presented to the court within five days of the detention hearing. As the grandmother points out, her deprivation petition was indeed presented within five days of the hearing, but the petition was presented five days *before*, rather than *after* the hearing, as clearly contemplated by the statute. The parents correctly contend that OCGA § 15-11-39 (a) provides that an adjudicatory hearing must be scheduled within 10 days after the filing of the petition.

"The fundamental idea of due process is notice and an opportunity to be heard. The Code recognizes that the parent is a party to proceedings involving his child. As parties to a deprivation hearing, parents are entitled to notice and an adequate opportunity to be heard." (Citations and punctuation omitted.) *In the Interest of A. J.*, 269 Ga. App. 580, 581 (1) (604 SE2d 635) (2004). Here, the parents received notice of a 72-hour hearing, not of a full deprivation hearing, and they did not have sufficient notice of the type of proceeding for which they needed to prepare. Also, when the parents' attorney moved for a forensic psychological interview with the children, the juvenile court, apparently denying that motion, noted that

> [a]nything I do today is going to be temporary and you know, for me to get a forensic scientist in here today for a temporary hearing, if what I do today is not satisfactory to one party or the other then they've got plenty of time to build up a case and get all of these things done and get it in the proper place for it to be a permanent order[.]

While the juvenile court's order expires by its own terms in March 2015, see OCGA § 15-11-58.1 (a), it functions as an adjudicatory order and the parents were harmed because they were not given sufficient notice or opportunity to prepare. See *In the Interest of A. R.*, 295 Ga. App. 22, 29 (7), n. 13 (670 SE2d 858) (2008) (harm must be shown in order to warrant reversal). "Because [the parents were] denied the

6

opportunity to be heard, constitutionally or as provided by statute, the deprivation proceedings at issue can be but a nullity." (Citations omitted.) *In the Interest of A. J.*, supra at 581 (1). Accordingly, we reverse this portion of the order and remand the case for a further hearing not inconsistent with this opinion.

2. The mother and S. B. P.'s father also contend that the trial court erred in denying their motion to transfer venue in the case to Floyd County, where the children resided with their mother prior to the filing of the deprivation petition. We disagree.

OCGA § 15-11-29 (a)[3] of the Juvenile Code provides as to venue that

> [a] proceeding under this article may be commenced in the county in which the child resides. . . . If deprivation is alleged, the proceeding *may be brought in the county in which the child is present when it is commenced*; provided, however, that for the convenience of the parties and witnesses, the court *may* transfer the proceeding to the county in which the child resides.

(Emphasis supplied.)

---

[3] This Code section was repealed effective January 1, 2014. Ga. Laws 2013, Act 127, § 1-1.

"In considering the trial court's ruling on the motion to transfer venue, we affirm the trial court's findings on disputed factual questions relating to venue if there is *any evidence* to support them. But we review de novo the trial court's application of the law to undisputed facts." (Citation and punctuation omitted; emphasis supplied.) *Hamner v. Turpen*, 319 Ga. App. 619, 620 (737 SE2d 721) (2013).

The parents argue that venue in the county where the children are present, rather than where they reside, is appropriate only when it is

> based on some immediate fortuitous exigency relating to the child's alleged deprivation. To say otherwise would allow OCGA § [15-11-29 (a)'s] ] alternative venue provision to be too broadly employed as a tool for arbitrary manipulation of venue of any juvenile deprivation proceedings to any Georgia county outside a subject child's legal domicile.

*In the Interest of B. G.*, 238 Ga. App. 227, 229 (518 SE2d 451) (1999). The parents contend that there was no such exigency in the instant case. However, the testimony before the juvenile court was that when B. T. H. told his mother he did not want to come home, she threatened to come to Tennessee and that the children would be "drug out and tortured." In response, the grandmother removed them to her home in Chattooga County and immediately filed a deprivation petition. Because there was

8

some evidence of exigency supporting the juvenile court's decision as to venue for the hearing, we find no error.[4]

*Judgment reversed and remanded in part; judgment affirmed in part. Barnes, P. J., and Miller, J., concur.*

---

[4] In denying the motion to transfer, however, the juvenile court stated that the *only* requirement for its jurisdiction was for "the children to be in the [c]ounty." Because of the exigency requirement when children are present, rather than reside in the county where the case is heard, see *In the Interest of B. G.*, supra, we affirm here because the juvenile court was right for any reason. *City of Gainesville v. Dodd*, 275 Ga. 824, 835 (573 SE2d 369) (2002).